STATE OF NEBRASKA, APPELLEE, V. WILLIAM MARTIN,
APPELLANT.
128 N. W. 2d 583
Filed May 29, 1964. No. 35609.

Kerrigan, Line & Martin, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

The defendant appeals from the jury verdict of guilty and the sentence for violation of the statute as to the making and uttering of an insufficient fund check. He assigns error in the insufficiency of the evidence to support the verdict and error in an instruction given by the trial court. The statute involved, section 28-1213, R. R. S. 1943, provides as follows: "Any person who, *with intent to defraud,* shall * * * draw * * * any

check * * * upon any bank * * * *knowing*, at the time of such * * * drawing * * * that the maker * * * has not sufficient funds in * * * such bank * * * for the payment of such check * * * in full upon its presentation, shall upon conviction * * *." (Emphasis supplied.)

The defendant was a truck driver, and his home was in Provo, Utah, where he had a bank account in the State Bank of Provo. On the afternoon of July 25, 1962, and after banking hours, the defendant left by plane for Fremont, Nebraska, on a 3-day vacation. He arrived in Fremont and registered at the Pathfinder Hotel. On the morning of July 25, 1962, the defendant telephoned the front desk of the hotel from his room and asked the bookkeeper, Berneice Linden, if she would cash his check for $50. She replied that she could not cash the check without it first being "O.K.'d" by his bank. The defendant then called his bank in Provo, Utah, and talked to the bank's bookkeeper. Berneice Linden listened in on the conversation between the defendant and the bookkeeper of the Provo bank and also talked directly to the bookkeeper. The actual bank balance of the defendant on July 26, 1962, as shown by the ledger sheets introduced in evidence, was $97.03. The defendant himself testified that the bookkeeper said his balance was $91. Berneice Linden said that the bookkeeper told her that the defendant had a balance of $200. Shortly after this conversation on the morning of July 26th, the defendant made and passed the check for $50 for which he received cash. This check was the basis for the prosecution. The check arrived in the State Bank of Provo and was presented for payment on July 30, 1962. At this time, the defendant had a balance of $0.85, and the check was returned to the hotel, through a Fremont bank, for insufficient funds. On August 3, 1962, the hotel's Fremont bank again forwarded the check to the Provo bank for collection. It was returned unpaid by the Provo bank on August 14, 1962. On August 3, 1962, the manager of the Pathfinder Hotel wrote the defndant at the address

he had given the hotel, 1020 S. 9th East, Provo, Utah, telling the defendant that the bank had forwarded the check for collection and that if payment was not received by August 15, 1962, the check would be turned over to the county attorney. This letter was never returned to the hotel. The defendant denied receiving it until the latter part of November 1962. Exhibit 5 shows that the State Bank of Provo, Utah, sent the defendant, by mail, a notice of the dishonor of this check entitled "Return Check Notice An Advice of Charge." It listed the $50 check issued on July 26, 1962, to the Pathfinder Hotel and stated, "On this date your balance according to our books was insufficient to meet your check or checks listed below. It is unlawful to issue checks against an account without sufficient funds on deposit. The check or checks listed below were returned to the last endorser." This notice was sent to the address that the defendant gave the bank, 266 West 4th North, Orem, Utah, a different address than the the one he gave the hotel. The defendant's ledger sheets at the Provo bank and the testimony of the bank cashier of the Provo bank establish that on July 26, 1962, the date the defendant issued the check in question, he had a balance of $97.03 in the account of said bank. On July 26th, the following checks, written by the defendant, were outstanding:

$ 5.50 dated July 17, 1962
10.00 dated July 20, 1962
10.00 dated July 20, 1962
15.00 dated July 22, 1962
144.22 dated July 25, 1962
10.00 dated July 21, 1962
10.55 dated July 25, 1962

$205.27

The evidence shows that all of the above checks, except the last two listed, were cleared by the Provo bank on July 27, 1962. The defendant returned to Provo, Utah;

from Fremont on July 27, 1962. On that date, a deposit of $141.94 was made in the defendant's account, and he exhausted any remaining funds in this account by a telegraphic money order in the sum of $50. No deposits were made to the account after July 27, 1962. His own testimony shows that he knew on August 3, 1962, that a check or checks "had bounced," and the evidence also shows that from July 27, 1962, to August 3, 1962, the defendant issued a series of six "no fund" checks against this account which were never paid. The defendant received cash from the hotel in exchange for his check. The defendant testified at the trial in his defense, and his testimony at the preliminary hearing and in another statement, both of which were made before a court reporter, were introduced in evidence. The defendant in this testimony gives vague, uncertain, and contradictory evidence concerning the knowledge he had about the outstanding checks at the time he called the hotel bookkeeper on July 26th. His own testimony reveals that he knew at the time he talked with the bank and the hotel bookkeeper that there were checks out against his account. The checks themselves were adequate testimony as to his knowledge of the situation. He testified that at one time he kept a book record of these checks. His testimony is vague and confusing as to why he didn't receive the different letters and notices sent to him by the bank and the hotel.

The State must introduce evidence to support a finding that the accused drew and delivered the check in question with the intent to defraud, and that he had knowledge at the time of drawing the check in question that he had insufficient funds in the bank for payment upon presentation. § 28-1213, R. R. S. 1943; White v. State, 135 Neb. 154, 280 N. W. 433. Also, the crime of obtaining money by means of an insufficient fund check, under the provisions of the statute involved here, is completed at the time the check is uttered and passed. State v. Eggers, 175 Neb. 79, 120 N. W. 2d 541. The de-

fendant contends generally that the evidence in this case is insufficient on the elements of intent to defraud and knowledge because the defendant and the hotel bookkeeper both talked to the bank bookkeeper and were informed that he had more funds on deposit than were necessary to cash the $50 check. We disagree with that contention. It fails to take into account the evidence as to the knowledge of the outstanding checks in the sum of $205.27. It also fails to take into consideration the other circumstances surrounding the transaction. He gave different addresses to the bank and to the hotel. He testified that he returned to the address in Provo that he gave the hotel, and then immediately following this testimony stated that he didn't return to that address. In Lahners v. State, 118 Neb. 184, 223 N. W. 951, a prosecution under this same section of the statute, our court said: "The jury in this case, on the question of intent and knowledge, had the check upon which payment had been refused for lack of funds. They had nine other checks, unpaid, given at about the same time, aggregating $1,397.66. They knew that on the day his bank balance was $35.50, and that he deposited $2,450 the next day, which was insufficient by about $1,400 to pay his outstanding checks; that three days before he borrowed $1,500 to take up some outstanding checks; and that a week later he filed a petition in bankruptcy to relieve himself of civil liability as to these checks. In addition, they had the conflicting testimony as to his arrangement for credit at the bank to take care of his checks. *This is abundant evidence to sustain the verdict of the jury.*" (Emphasis supplied.)

The similarity of the situation in the above case and the one presented here is apparent. It is true, as defendant contends, that this crime requires competent evidence to show a specific intent to defraud. Intent, as we have said many times, is seldom susceptible to direct proof but must be inferred from all of the facts and circumstances in the case. The evidence as to intent

and knowledge on the part of the defendant at the time he issued the check on the morning of July 26, 1962, was clearly for the jury under all of the facts and circumstances set out. He had some money in the bank, but the jury could infer that he knew about the outstanding checks and that they would clear the bank before the $50 check reached it. This is exactly what happened. "It is only where there is a total failure of competent proof in a criminal case to support a material allegation in the information, * * * that the trial court will be justified in directing a verdict of not guilty." Kennedy v. State, 171 Neb. 160, 105 N. W. 2d 710. See, also, Lahners v. State, *supra;* State v. Eggers, *supra.* There is no merit in defendant's contention as to the insufficiency of the evidence.

In this case, following the provisions of section 28-1214, R. R. S. 1943, the court instructed the jury, in substance, that in the prosecution of the maker or drawer of an insufficient fund check, the making or delivering of a check, payment of which is refused because of lack of funds, is presumptive evidence of intent to defraud and knowledge, and that if the maker does not pay the check within 5 days after receiving notice of protest or notice of dishonor, and "if such * * * notice of dishonor thereof, shall state that payment of such check * * * was refused because of lack of funds or credit of the maker * * * then such * * * notice of dishonor shall be presumptive evidence that there was a lack of funds in, or credit with, such bank * * *."

The defendant does not quarrel with the correctness of the above statement of law but argues that the evidence is insufficient to sustain the giving of this instruction or to sustain the verdict of the jury, since we must presume that the jury could have based its verdict of guilty on the force of the presumption. He argues that the purpose of the statute is to lessen the degree of proof necessary to prove intent to defraud and knowledge. He argues that if the State is to avail itself of

this presumption and the benefits of this statute, it must strictly adhere to the evidentiary requirements set out in the statute. He argues that the State did not prove that the required notice of dishonor was given and that, therefore, the State cannot avail itself of the presumption. For this proposition, he cites cases, which we have examined, from other jurisdictions. These cases arise with reference to different statutes or are not in point factually with this case. They are authority for the point that if a notice must be given as a condition for the creation of a presumption of intent or knowledge the statute must be complied with. This statute, section 28-1214, R. R. S. 1943, not only uses the term, "notice of dishonor," but defines what such a notice of dishonor must contain. It says that if the notice of dishonor shall state that the payment of such check was refused because of lack of funds, then it shall be presumptive evidence that there was such a lack of funds. Besides the letter of August 3, 1962, sent by the hotel to the address in Provo that the defendant gave the hotel, the defendant was advised in a notice mailed by the bank on July 30, 1962, that the Pathfinder Hotel check had been received, that there were insufficient funds to pay it, and that the check had been returned. We think this is sufficient competent evidence to sustain a finding that there was a compliance with the terms of the statute. The defendant argues failure of the State to show technical compliance with the provisions of the statute with respect to protest and notice of dishonor. But, there is evidence that the requirements of the statute have been met. This is sufficient. The trial court properly instructed that this presumption was rebuttable, and we find no error in the giving of this instruction.

The defendant further argues the insufficiency of the evidence because the hotel bookkeeper, in cashing the check, relied on the representation by the Provo bank that sufficient funds were on deposit. Berneice Linden,

the bookkeeper, testified that she listened in on the telephone conversation with the bank, that the bank stated to her that the defendant had $200 in his bank account, and that she cashed the check relying on this representation. The defendant in support of his contention cites Beyl v. State, 165 Neb. 260, 85 N. W. 2d 653, and several cases from other jurisdictions. The Beyl case, *supra*, was a prosecution for the obtaining of money by false pretenses. This case and the other cases cited arose under statutes which hold that the false pretense must be an effective cause in inducing the owner to part with his property. In other words, there must be reliance upon a false representation. The defendant here was not informed against for obtaining money by false pretenses. He was prosecuted for the crime of uttering an insufficient fund check under section 28-1213, R. R. S. 1943. The elements are an intention to defraud and a knowledge that at the time of the making of such check he has not sufficient funds for its payment upon presentation. It is not required under this statute that the State prove that the payee of an insufficient fund check actually parted with any money or property. In State v. Eggers, *supra*, the court said: "The crime of obtaining money by means of an insufficient fund check is completed at the time the check is uttered and passed." The offense of issuing a check without sufficient funds is complete when the check is issued with the intent to defraud, even though no one is defrauded thereby. People v. Freedman, 111 Cal. App. 2d 611, 245 P. 2d 45; People v. Cortze, 108 Cal. App. 111, 290 P. 1083; People v. Kitchens, 164 Cal. App. 2d 529, 331 P. 2d 127. Furthermore, we feel that the jury could have inferred from all of the circumstances surrounding the telephone conversation with the bank that the hotel actually relied upon the assurance that there were sufficient funds in the bank, and also the implied representation of the defendant at the time of issuing the check that such funds would remain in the bank for payment of the

check upon presentation. The hotel had no knowledge of any other outstanding checks. The defendant alone knew about this. It was not indicated or necessary that the hotel make an affirmative inquiry about the defendant's outstanding checks. The jury could have inferred that it was the scheme and design of the defendant to delude the hotel into relying on the bank balance of July 26, 1962, well knowing that other checks were out and would destroy the balance before the hotel check arrived for presentation and payment. The checks that destroyed the possibility of the payment of the hotel check arrived and were paid by the bank on the next day, July 27, 1962.

We have examined the record and find no error prejudicial to the defendant. The judgment and sentence of the trial court in all respects are correct and are affirmed.

AFFIRMED.