STATE OF NEBRASKA, APPELLEE, v. ANTHONY COSTELLO, APPELLANT.

256 N. W. 2d 97

Filed July 13, 1977. No. 41149.

Clyde F. Starrett, for appellant.

Paul L. Douglas, Attorney General, and Paul W. Snyder, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

In an information filed in the District Court for Red Willow County on March 1, 1976, Anthony Costello, the defendant and appellant herein, was charged with delivering a bank check with intent to defraud at a time when he knew he did not have sufficient funds in his bank account for the payment of the check. Trial before a jury commenced on July 26, 1976, and the defendant was found guilty as charged. The defendant was sentenced to a term of imprisonment for not less than 3 nor more than 5 years. Defendant has appealed to this court from his conviction and sentence, assigning as error numerous alleged violations of his constitutional rights, erroneous rulings on the admissibility of evidence at trial, failure to grant him a new trial on the ground of newly discovered evidence, and excessiveness of his sentence. We affirm the judgment and sentence of the District Court.

The relevant facts are as follows. On October 23, 1975, a complaint was filed in the county court of

Red Willow County charging that the defendant had on October 7, 1975, delivered to Vogue Clothing Company a bank check for the payment of money in the amount of $79.68 upon the First Wisconsin National Bank of Oshkosh, Wisconsin; and that at the time of delivering the check the defendant knew he did not have sufficient funds in such bank for payment of the check. A warrant was issued for defendant's arrest on October 23, 1975.

Defendant was arrested in Florida on December 1, 1975, by sheriffs of Lee County, Florida. He was returned to Nebraska on February 17, 1976, by a Florida sheriff, and was promptly arraigned. A bond of $10,000, with permission to post 10 percent of that figure, was set and continued throughout the proceedings below. An information similar to the complaint filed in county court was filed in the District Court on March 1, 1976. The information, however, alleged that the defendant had delivered the insufficient fund check on October 23, 1975, rather than on October 7, 1975, as had been alleged in the complaint. This discrepancy was apparently due to the State using the date the complaint was filed rather than the date referred to in the complaint when it drafted the information. The State was permitted to amend the information to reflect the correct date of October 7, 1975, on the day before the trial commenced.

Prior to trial, defendant moved to dismiss the information on the grounds that he had been denied a speedy trial and that his removal from Florida to Nebraska constituted a denial of due process. He also moved to disqualify the trial judge on the ground of bias. These motions were overruled. After opening statements were made at the trial, defendant moved for mistrial on the grounds that the prosecutor had improperly argued law before the jury in his opening statement, and had referred to the defendant as a "paper hanger" and a "bad check artist." This motion was overruled.

The evidence at trial showed that the defendant had written a check to Vogue Clothing Company of McCook, Nebraska, on October 7, 1975. The check was in payment for clothing the defendant had purchased at that store, and was a personal check written on defendant's account at the First Wisconsin National Bank of Oshkosh, hereinafter referred to as the "Wisconsin bank." The check was processed through normal banking channels, and was returned to Vogue Clothing Company by the Wisconsin bank, unpaid. An employee and the owner of Vogue Clothing Company identified the defendant as the person who wrote the check and presented it to them. The check was identified and received in evidence.

Jerrold L. Kamp, operations officer for the Wisconsin bank, testified that he had returned the check because of insufficient funds. He further testified in regard to the status of the defendant's account at the Wisconsin bank from June 25, 1975, to October 15, 1975. The defendant's account became overdrawn in the amount of $148.58 as of August 7, 1975, for the following reasons: At the end of July 1975, the defendant had deposited three checks in a total amount of $2,950 in his Wisconsin bank account, all written upon another personal account the defendant had in a North Carolina bank. These three checks were unpaid by the North Carolina bank due to insufficient or uncollected funds. At the same time the defendant was purporting to deposit funds in the Wisconsin bank by drawing checks on his account in the North Carolina bank, he was purporting to deposit funds in the North Carolina bank by drawing a check on his account in the Wisconsin bank. Neither bank paid the checks written on the accounts, and the lack of deposits in the Wisconsin bank resulted in the overdrawn balance of $148.58 in defendant's account. Copies of the three checks referred to were admitted in evidence over defendant's objection.

Kamp also testified that the defendant had made

no more deposits after the purported ones described above, but that the Wisconsin bank had to return, unpaid, a large number of checks which the defendant had written on his account from late July 1975, to November 1975. Copies of these checks were admitted into evidence over defendant's objection. At the close of the State's evidence, defendant's motion to dismiss the information on grounds similar to those he raises in his assignments of error in this appeal was overruled. The defendant rested without presenting a defense.

Approximately 2 months after trial, defendant moved for a new trial on the ground of newly discovered evidence. The new evidence upon which defendant relied was a laboratory report prepared for the State prior to trial by a documents examiner. The examiner had compared the signature on the check to Vogue Clothing Company with that on photocopied materials bearing the defendant's signature, and concluded that the defendant had written the check to Vogue Clothing Company. At the conclusion of the report, the examiner stated that it would be necessary to examine the originals of the documents he had used in his analysis before he appeared in court. The trial court overruled defendant's motion. The defendant was sentenced to a term of imprisonment for not less than 3 nor more than 5 years.

Defendant discusses 10 assignments of error in his brief. In the following discussion, we will consolidate those which are related.

Defendant first contends that he was denied a speedy trial in violation of the Sixth Amendment to the Constitution of the United States and Article I, section 11, of the Constitution of Nebraska. In this case the defendant was arrested in Florida on December 1, 1975, and returned to Nebraska and arraigned on February 17, 1976; the information was filed on March 1, 1976; and trial commenced on July 26, 1976.

Section 29-1207, R. R. S. 1943, provides that every person indicted or informed against for any offense shall be brought to trial within 6 months, and that such "six-month period shall commence to run from the date the indictment is returned or the information filed." In State v. Born, 190 Neb. 767, 212 N. W. 2d 581 (1973), this court held that in felony cases the 6-month period commences to run from the date the indictment is returned or the information filed and not from the time the complaint is filed in county court. It is obvious in this case that less than 6 months had elapsed from the time of the filing of the information and the commencement of trial. Therefore there was no violation of section 29-1207, R. R. S. 1943, in this case.

The constitutional right to a speedy trial and the statutory implementation of that right under section 29-1207, R. R. S. 1943, however, exist independently of each other. "The fact that the statute does not apply to proceedings or delay occurring prior to the filing of an information in a felony case in no way lessens the duty of the State to provide the defendant with a speedy trial as required by the Constitution. In considering the constitutional right to a speedy trial, the extent of any delay, the reasons for the delay, and prejudice, if any, to the defendant, are all relevant factors to be considered by the court." State v. Born, *supra*. See, also, Barker v. Wingo, 407 U. S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Any unreasonable delay occurring prior to the filing of an information will be considered, in conjunction with statutory requirements, in determining whether or not a defendant has been denied the constitutional right to a speedy trial. State v. Born, *supra*.

A consideration of the factors listed above indicate that the defendant was not denied a speedy trial in this case. The defendant was not turned over to Nebraska authorities until February 17, 1976. The information was filed within a 2-week period, and the

trial court sought to bring the case to trial at an early date. At one stage of the proceedings defendant was granted a 30-day continuance at his request. The length of the delay from the time of arraignment to the time of trial, even including the 30-day continuance requested by the defendant, was approximately 5 months. There was no attempt by the prosecution to delay the proceedings. Part of the delay was due to the trial court taking precautions to assure that the defendant was adequately represented by counsel. Defendant has made no showing that he was prejudiced by the delay. In such circumstances, there was no denial of his right to a speedy trial. State v. Born, *supra*; Barker v. Wingo, *supra*.

Defendant next contends that his removal from Florida to Nebraska was illegal, and constituted a violation of due process such that the District Court had no jurisdiction over him. In summary, defendant contends that he was not arrested on a proper Governor's warrant, that the arresting officers in Florida violated his constitutional rights, and that the provisions of the Uniform Criminal Extradition Act, sections 29-729 to 29-758, R. R. S. 1943, were not complied with after his arrest. Defendant's contentions, even if accepted as true, are not dispositive of the issue. The "power of a court to try an accused is not impaired by the fact that officers used unlawful force or deception to bring him from another jurisdiction to the trial." Maddox v. Sigler, 181 Neb. 690, 150 N. W. 2d 251 (1967). There is no prohibition in the Constitution of the United States or of the State of Nebraska which exempts an offender, unlawfully brought into this state, from trial and punishment for any offense against the laws of this state. State v. Nicholson, 183 Neb. 834, 164 N. W. 2d 652 (1969); Jackson v. Olson, 146 Neb. 885, 22 N. W. 2d 124 (1946). See, also Frisbie v. Collins, 342 U. S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952). Defendant relies on United States v. Toscanino, 500 F. 2d 267 (2d Cir.,

1974), where the court held that due process prevents the exercise of jurisdiction over a defendant when he is brought before the court under extreme and shocking duress, such as where he has been kidnapped from a foreign country and removed to this country by means of bribery and torture, and in violation of international treaties and the federal kidnapping act. No such situation is present in this case, and defendant's contention that the District Court had no jurisdiction over him is without merit.

Defendant argues that the trial judge should have disqualified himself in this case because he was biased against the defendant. Defendant cites three factors as evidence of the alleged bias: The judge continued a bail bond in the amount of $10,000, with permission to post 10 percent of that figure, although the defendant was accused of writing only a $79.68 insufficient fund check; the judge overruled defendant's motion to dismiss prior to trial; and the judge sentenced the defendant to a prison term of 3 to 5 years. This assignment of error is frivolous. The factors relied on by the defendant do not even suggest bias on the part of the trial judge. A reading of the record indicates that the trial judge conducted the proceedings below in a completely fair and impartial manner, and does not raise even an inference of bias. A trial judge's overruling of a motion for change of judge on the ground of his bias and prejudice will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. State v. Davis, 198 Neb. 823, 255 N. W. 2d 434 (1977); 46 Am. Jur. 2d, Judges, § 222, p. 244.

Defendant's contention that it was error to permit the State to amend the information on the day before trial to change the date of the alleged crime from October 23, 1975, to October 7, 1975, is also without merit. The District Court, before trial, may in its discretion permit amendment of a criminal information, provided the amendment does not change the

nature or identity of the offense charged, and the amended information does not charge a crime other than the one on which the accused has his preliminary examination. State v. Gascoigen, 191 Neb. 15, 213 N. W. 2d 452 (1973). The amendment in this case was made before trial, and was to correct the error made in drafting the information, as previously described. The amendment did not change the nature or the identity of the crime charged. At the preliminary hearing, the correct date of October 7, 1975, was referred to, and the original complaint set forth the correct date. Defendant has made no showing that he was prejudiced by the amendment, and in fact did not even request a continuance at the time amendment was permitted. It was not error to permit the amendment.

Defendant contends that it was error to overrule his motion for a mistrial made on the grounds that the prosecutor, in his opening statement, presented argument on the law to the jury and referred to the defendant as a "bad check artist" and a "paper hanger." The prosecutor's opening statement was not recorded in the bill of exceptions. Arguments by counsel made after the statement, however, were recorded, and they indicate that the prosecutor did refer to the defendant as a "bad check artist" and a "paper hanger." The record does not show the precise nature or extent of the alleged argument of law made by the prosecutor before the jury.

This court is unable to review the contention that a mistrial should have been granted because the prosecutor argued law before the jury. Where argument of counsel at trial is not recorded, there is no basis upon which the ruling of the trial court on the motion for a mistrial can be reviewed in this court. State v. Howell, 196 Neb. 832, 246 N. W. 2d 479 (1976); State v. Sanders, 195 Neb. 789, 241 N. W. 2d 117 (1976). The only evidence contained in the bill of exceptions in regard to the nature or extent of the prosecutor's

argument before the jury is a statement by defendant's counsel that the prosecutor had argued what the law should be in regard to checks, and that there should be punishment for various types of check crimes. On such an incomplete record, it is impossible for this court to review the contention that conduct of the prosecutor was prejudicial to the defendant such that a mistrial should have been granted.

This court can review defendant's contention that his motion for a mistrial should have been granted because the prosecutor referred to the defendant as a "bad check artist" and a "paper hanger" in his opening statement. Although the references were not recorded at the time they were made, the bill of exceptions shows that the prosecutor, immediately after the opening statement, admitted he had made them.

It is clearly the "duty of the prosecuting attorney to conduct the trial in a fair and impartial manner and to not inflame the prejudices or excite the passions of the jury against the accused." State v. Davis, 185 Neb. 433, 176 N. W. 2d 657 (1970). See, also, Garcia v. State, 159 Neb. 571, 68 N. W. 2d 151 (1955). Whether misconduct on the part of a prosecuting attorney is prejudicial to the defendant depends largely upon the facts of each particular case. Froding v. State, 125 Neb. 322, 250 N. W. 91 (1933). If the prosecutor has not conducted the trial in a fair and impartial manner, the conviction will be set aside. State v. Casados, 188 Neb. 91, 195 N. W. 2d 210 (1972).

In State v. Casados, *supra*, on which defendant relies, the accused was charged with child stealing. During argument before the jury, the prosecutor referred to the accused as a "despicable" person, and argued that the evidence showed the accused was the most lowly person the jury would have occasion to judge. The prosecutor also argued that the evidence showed that accused was a "pimp." This court held that such argument by the prosecutor was

prejudicial, and reversed the accused's conviction, noting that the remarks of the prosecutor had nothing to do with the offense with which the accused was charged. The court also stated, however, that often inflammatory remarks by a prosecutor are not considered sufficiently prejudicial to constitute error; and that each case must be determined on its own facts.

In Johnson v. United States, 484 F. 2d 309 (8th Cir., 1973), cert. den., 414 U. S. 1039, 94 S. Ct. 539, 38 L. Ed. 2d 329 (1973), the defendant was charged with distributing heroin, and the prosecutor referred to the defendant as a "pusher" in his argument to the jury. The court found that the statement was neither so inflammatory nor so misleading as to require a mistrial, noting that the word "pusher" has a common meaning, and that there was ample evidence that the defendant had distributed heroin.

The Johnson case is closely analogous to the present case, and we do not believe that the references made by the prosecutor were so inflammatory or prejudicial as to require a mistrial. Unlike the statements in State v. Casados, *supra,* the statements in this case were not directed toward an offense other than the crime charged, and were not nearly so inflammatory. Although such expressions as "bad check artist" and "paper hanger" should clearly not be used by prosecuting attorneys, their use in the present case cannot be said to be prejudicial where the evidence was overwhelming that the defendant had written an insufficient fund check. It was not reversible error for the trial court to overrule defendant's motion for a mistrial. Johnson v. United States, *supra.*

We now examine the issue of whether it was error for the trial court to admit in evidence photocopies of checks which were part of the Wisconsin bank's records in regard to the defendant's account in that bank. Three of the checks were written by the de-

fendant on his account in the North Carolina bank, and were deposited in the Wisconsin bank. As previously stated, these checks were not honored by the North Carolina bank. The remaining checks were ones written by the defendant to various persons or business enterprises between the end of July 1975, and November 1975; and returned to the payees by the Wisconsin bank because defendant had insufficient funds in his account.

Defendant objects to the admission in evidence of the photocopies of checks on two grounds. First, he contends that their authenticity was questioned, and that the originals should have been introduced; and, second, he argues that the checks were inadmissible because they were evidence of crimes other than the one with which he was charged in the information.

The first contention is groundless. The photocopies in this case were identified by a Wisconsin bank officer as part of the business records of that bank. The originals were not available because they had been returned to the payees or the defendant pursuant to normal banking procedure. Section 27-1002, R. R. S. 1943, provides generally that to prove the content of a writing, the original writing is required. Section 27-1003, R. R. S. 1943, however, provides: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." This court has previously held that a photocopy of a check made and retained by a bank is admissible in evidence where the original is returned to the maker by the bank. State v. Novak, 181 Neb. 90, 147 N. W. 2d 156 (1966).

In this case there is no genuine question raised at trial as to the authenticity of the original checks received by the Wisconsin bank. Defendant objected to the admission in evidence of the photocopies on

the ground that they were incompetent, irrelevant, and immaterial, not on the ground that the authenticity of the originals was questionable. Contrary to defendant's contention, the photocopies are legible such that the signatures of the drawer and payee, and the amount and date of each check are discernible. The officer of the Wisconsin bank testified to the fact that the photocopies are accurate representations of the originals, and he had personally reviewed the originals before they were photocopied and returned unpaid. Under the circumstances of the case, it was not unfair to admit the duplicates in lieu of the originals.

The second issue is whether the checks should have been excluded because they were evidence of crimes other than the one with which defendant was charged in the information. As a general rule, evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. State v. Brown, 190 Neb. 96, 206 N. W. 2d 331 (1973). Such evidence is admissible, however, to show motive, intent, or guilty knowledge; or if it establishes a course of conduct, scheme, design, or intent. State v. Moore, 197 Neb. 294, 249 N. W. 2d 200 (1976); § 27-404, R. R. S. 1943.

In the present case, the checks received as evidence clearly fall within the exception to the general rule. The State was required to prove not only that the defendant had delivered a check to Vogue Clothing Company with intent to defraud, but also that at the time he knew that he did not have sufficient funds in the bank upon which the check was drawn. § 28-1213, R. R. S. 1943; State v. Martin, 177 Neb. 209, 128 N. W. 2d 583 (1964). The three checks by which defendant purported to make deposits in the Wisconsin bank were documentary evidence in support of the Wisconsin bank officer's testimony that the defendant had made no deposits in his account after the end of July 1975; and that the account became

overdrawn as of August 7, 1975. Such evidence was clearly relevant to the issue of guilty knowledge on the part of the defendant that he had no funds in his account. The defendant's checks which were returned unpaid by the Wisconsin bank shortly before and after the date of the crime charged were evidence of defendant's knowledge that he had no funds in his account; and were relevant to the issue of intent to defraud, an element of the crime charged under section 28-1213, R. R. S. 1943. The fact that the defendant continued to write checks on his account after it was overdrawn showed a course of conduct relevant to the crime charged. The decision to receive evidence which may show that the defendant has committed crimes other than the one charged in the information, where such evidence shows intent, motive, knowledge, or a course of conduct is one left largely to the discretion of the trial court, and there was no abuse of discretion in this case. State v. Moore, *supra.*

Defendant next contends that his motion for new trial on the ground of newly discovered evidence should have been granted. Section 29-2101, R. R. S. 1943, provides that a new trial may be granted for the reason of "newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial." A new trial on the ground of newly discovered evidence may be granted when the evidence is competent, material, and credible, and so potent that, by strengthening evidence already offered, a new trial would probably result in a different verdict. State v. Seger, 191 Neb. 760, 217 N. W. 2d 828 (1974); Duffey v. State, 124 Neb. 23, 245 N. W. 1 (1932).

The laboratory report which defendant contends is newly discovered evidence has already been described. The report was not newly discovered evidence sufficient to support a motion for new trial on

that ground. It was not so potent as to probably result in a different verdict, and in fact supported the view that the defendant was guilty. It does not show, as the defendant suggests, that the State's evidence was not good. The State did not attempt to use the report or have its author testify at trial. With due diligence, the defendant could have secured evidence in regard to the authenticity of his signature on the check to Vogue Clothing Company prior to trial, had he wished to do so. The District Court was correct in overruling defendant's motion for new trial on the gound of newly discovered evidence. State v. Seger, *supra*.

The final contention of the defendant is that his sentence is excessive. Defendant was sentenced to a term of imprisonment for not less than 3 nor more than 5 years. He was given credit for the 292 days he was incarcerated after his arrest to the time of his sentence. Section 28-1213, R. R. S. 1943, provides that a person found guilty of delivering an insufficient fund check of more than $75 may be imprisoned not exceeding 10 years. Defendant's basic argument is that the insufficient fund check he delivered was for only $79.68, and that a sentence of 3 to 5 years imprisonment is excessive in light of the amount of the check in this case.

The defendant ignores his prior record and relevant factors properly considered in imposing a sentence. The defendant has operated under 14 different aliases. The State of Arizona, Montana, Kansas, and Oklahoma have issued arrest warrants for, or instituted charges against, the defendant for writing insufficient fund checks. In Wisconsin a criminal prosecution is pending against the defendant for issuing a worthless check. The charges in Arizona include the allegation that the defendant opened an account in an Arizona bank upon closed accounts in Illinois and Colorado banks, and then wrote checks on the Arizona bank account. At the time the defend-

ant was arrested, a large number of check blanks from numerous banks in different states were found.

Defendant's record includes grand larceny in the first degree, writing insufficient fund checks, and rape. He was sentenced to 10 to 20 years imprisonment upon his conviction of grand larceny in New York, and, when he was paroled, he violated the conditions of parole on more than one occasion.

The circumstances relevant to sentencing obviously did not consist of only one isolated event in regard to a small check. Defendant was engaged in an attempt to "float" nonexistent funds between banks, and then write checks before it was discovered that he had no funds in any bank. The amount of the check involved in a prosecution for delivering an insufficient fund check is a relevant factor in regard to sentencing, but the trial court is entitled to consider all relevant evidence or information which may be used as assistance in determining the kind and extent of punishment to be imposed. State v. Holzapfel, 192 Neb. 672, 223 N. W. 2d 670 (1974). We have repeatedly held that a sentence imposed within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of discretion on the part of the sentencing judge. State v. Tweedy, 196 Neb. 253, 242 N. W. 2d 631 (1976). In light of the circumstances of this case and the defendant's prior record, the trial court did not abuse its discretion in imposing the sentence it did.

We have carefully examined all the defendant's assignments of error, and they are without merit. The judgment and sentence of the District Court is affirmed.

AFFIRMED.