STATE OF NEBRASKA, APPELLEE, V. ROBERT P. FREDERIKSEN, APPELLANT.

400 N.W.2d 225

Filed January 30, 1987. No. 86-577.

Thomas J. Young of Young, LaPuzza & Stoehr, for appellant.

Robert M. Spire, Attorney General, and Laura L. Freppel, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The defendant appeals the affirmance by the district court for Douglas County of his conviction in the county court for Douglas County for second offense driving while intoxicated.

On October 15, 1985, the defendant consumed four or five beers at a friend's house. On the way home the defendant had to take evasive action to avoid an oncoming car and in so doing struck a tree. He hit his head against the windshield and was in a daze after the accident.

The officer who arrived at the scene testified that he detected a moderate odor of alcohol coming from the defendant and that the defendant was unsure of his footing. The officer asked the defendant to perform field sobriety tests. The defendant responded that he had multiple sclerosis and could not accomplish the tests. The officer took the defendant to his cruiser and asked him to perform verbal sobriety tests. Based on his observations of the defendant, the officer concluded the defendant was under the influence of alcohol to a sufficient extent to impair his ability to operate a motor vehicle. On cross-examination, however, the officer did admit that the defendant's inability to pass the sobriety tests could have been caused by the injury he sustained in the accident.

The defendant was taken to the police station, where a breath test was performed during the early morning hours of October 16. The reading was .214 percent weight by volume. At trial the defendant objected to the admission of photocopies of

documentary evidence relating to the testing and maintenance of the Intoxilyzer machine and the license possessed by the person who performed the test.

On appeal the defendant contends the county court erred when it allowed photocopies of that documentary evidence to be admitted into evidence without first requiring the State to have brought the originals to trial for inspection by the defendant. Because that documentary evidence provided the foundation for the admission of the breath test, the defendant also contends the county court erred when it admitted the breath test result into evidence. Finally, the defendant contends that, because the breath test was improperly admitted, the county court erred when it found the defendant guilty of violating Neb. Rev. Stat. § 39-669.07(2) (Reissue 1984). We affirm the district court's determination that the county court did not err.

Neb. Rev. Stat. § 27-1002 (Reissue 1985) governs the introduction of documents into evidence. That section provides in part: "To prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules . . . ." One of the exceptions to this rule is that found in Neb. Rev. Stat. § 27-1003 (Reissue 1985). That section provides: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Neb. Rev. Stat. § 27-1001(4) (Reissue 1985) in pertinent part defines "duplicate" as "a counterpart produced . . . by means of photography . . . or by other equivalent techniques which accurately reproduce the original." Thus, in order to be a duplicate, a photocopy must be an accurate reproduction of the original document. Here, the witnesses who supplied the foundation for the documentary evidence testified the photocopies were exact copies of the originals. Therefore, the State properly established that the copies introduced were "duplicates" of the original documents and were properly admissible unless "(1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

§ 27-1003.

The burden of raising an issue as to the authenticity of the original is on the party opposing admission. *United States v. Georgalis*, 631 F.2d 1199 (5th Cir. 1980); *United States v. DiMatteo*, 716 F.2d 1361 (11th Cir. 1983). See *State v. Costello*, 199 Neb. 43, 256 N.W.2d 97 (1977). It follows then that it is also the defendant's burden to show how in the circumstances it would be unfair to admit the duplicate.

At trial the defendant did not question the authenticity of the originals. Instead, he merely argued that the State should have produced the originals at trial so he could review them. With reference to at least one exhibit, defendant indicated that he would not have objected to the State's withdrawing the original and substituting a copy. Although not articulated as such, the defendant's argument is basically one of "unfairness." He believes it is unfair to admit duplicates of available original documents in the control of the State when he has not had a chance to make sure the originals actually exist and to compare them to the duplicates.

In support of this argument the defendant cites *State v. Costello, supra*. In that case, to prove an insufficient funds charge, the State was allowed to introduce photocopies of the checks in question. One of the reasons this court affirmed the district court's admission of those checks into evidence was because the originals had been returned to either the payees or the defendant. The defendant in this case believes that was the only reason the admission of those checks in *Costello* was proper. That is not the case. As we stated:

> In this case there is no genuine question raised at trial as to the authenticity of the original checks received by the Wisconsin bank. . . . Contrary to defendant's contention, the photocopies are legible such that the signatures of the drawer and payee, and the amount and date of each check are discernible. The officer of the Wisconsin bank testified to the fact that the photocopies are accurate representations of the originals, and he had personally reviewed the originals before they were photocopied and returned unpaid. Under the circumstances of the case, it was not unfair to admit the duplicates in lieu of the

originals.

*Id*. at 55-56, 256 N.W.2d at 105.

Similarly, the defendant in this case did not meet his burden of showing the "unfairness" of introducing the photocopies into evidence. First, the record does not indicate that, prior to trial, the defendant ever asked to review the documents in question or that the State refused to comply with any such requests. Second, the witnesses who supplied the foundation for the documentary evidence testified the photocopies were exact copies of the originals. If the defendant had wanted to cast doubt on this testimony and thereby show why the admission of the photocopies would be unfair to the defendant, he could have questioned the witnesses as to the foundation for their statements. This the defendant did not do. Thus, he failed to make a sufficient showing of why it would be unfair to introduce the photocopies into evidence without him first having had a chance to review the originals.

The defendant next contends that the result of the breath test performed on him was improperly admitted into evidence for two reasons. First, he contends the test result was improperly admitted because the necessary foundation for the admission of that test result as set forth in *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980), the documentary evidence previously discussed, was improperly admitted. Because we have determined the documentary evidence was properly admitted, this contention has no merit.

Second, the defendant contends the test result was improperly admitted into evidence because the 190-day percent deviation check of the Intoxilyzer performed by the Department of Health on October 16, 1985, exhibit 7, was based on a calculation at the testing site made on December 21, 1984, exhibit 5, and therefore could not have been the basis for the October 16 deviation check. In making this argument the defendant misconstrues the purpose of the operation performed on December 21, 1984.

Neb. Admin. Code tit. 177, ch. 1, § 007.06B (1984) provides: "Testing devices used for direct breath testing shall have been checked within 190 days prior to an analysis by a person responsible for maintenance and calibration." (Emphasis

omitted.) Section 007.06B1 then details how that check shall be made. Basically, the person responsible for maintenance at a site shall request from the Department of Health a simulator check sample. That sample is then tested at the site and the results forwarded to the Department of Health, which will then compare the test result received with the known value of the sample to determine that the percent deviation is within the allowable plus or minus 10-percent figure. The test at the site was performed on October 2, 1985, well within the 190-day requirement when compared to the analysis of the defendant's breath on October 16, 1985.

However, the defendant insists that the verification and certification of reference standards required by Neb. Admin. Code tit. 177, ch. 1, § 007.04C (1984), which standards are used for checking direct testing devices, and which verification was made on December 21, 1984, must also be done within the 190-day period. This is not true.

Section 007.04C states as follows:

> Certain reference standards used . . . for calibration and for verification of direct breath testing devices which are approved for use are:
>
> . . . .
>
> 007.04C2 Intoxilyzer reference standard, manufactured by CMI, Inc., and consisting of a beam attenuatory accessory is an approved standard provided the target value of the reference standard has been verified according to the following steps and certified prior to placement into service at a testing site.

(Emphasis omitted.) There then follow instructions for determination of the assigned target value of the reference standard for that beam attenuatory accessory.

Although the State has done less than a satisfactory job of explaining the nature of a beam attenuatory accessory, we conclude from the testimony of the person certified as the onsite maintenance and calibration person that it is a lens-like object, identified specifically by a serial number, which is inserted into the particular testing device as a reference standard to ensure that the calibration of the testing device is correct. In other words, as we view the record, the beam

attenuatory accessory is not a mechanical device which needs testing and adjusting from time to time, but rather amounts to a fixed standard, which target value once determined does not change. There is no reason for nor is there anything in the rules and regulations which would require a redetermination of that target value of the beam attenuatory accessory.

Exhibits 5 and 7 and the Intoxilyzer test of the defendant's breath properly were admitted in evidence.

The defendant's final contention is that the court erred in finding the defendant guilty of violating § 39-669.07(2) because the breath test was improperly admitted. We have determined the breath test was properly admitted, that test showing a .214-percent reading. Section 39-669.07, the statute prohibiting driving while intoxicated, provides that such offense may be committed by being under the influence of alcoholic liquor or having ten-hundredths of one percent or more by weight of alcohol in the body fluid. *State v. Hilker*, 210 Neb. 810, 317 N.W.2d 82 (1982). Because the defendant was above the .1-percent statutory limit, he properly was found guilty of the offense charged. The judgment of the district court is affirmed.

AFFIRMED.