EQUITABLE LIFE AUSSURANCE SOCIETY OF THE UNITED STATES, APPELLANT, V. FRANCES D. STARR, FORMERLY KNOWN AS FRANCES D. EHLERS, APPELLEE.

489 N.W.2d 857

Filed October 2, 1992.    No. S-89-1249.

Daniel E. Klaus, of Rembolt Ludtke Parker & Berger, for appellant.

James D. Smith, of Brock, Seiler & Smith, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In a contract action brought by Equitable Life Assurance Society of the United States (Equitable) against Frances D. Starr, formerly known as Frances D. Ehlers, as comaker of a promissory note, Starr denied signing the note, and a jury found in her favor. In its appeal, Equitable contends that the trial court misapplied the "best evidence" rule.

## FACTUAL BACKGROUND

On May 5, 1980, newlyweds Pamella and James Ehlers obtained a $147,000 loan from Equitable to consolidate some farm debt and finance construction of a home. As a condition for this loan, Equitable required that James' parents, Alvin and Frances Ehlers, as comakers, also sign the promissory note with Pamella and James. Part of the loan proceeds distributed to Pamella and James was represented by Equitable's check for $112,440. Five payees were designated on the check: "James A. Ehlers, Pamella J. Ehlers, Alvin R. Ehlers, Frances D. Ehlers," and also "Donald L. Robson Insurance and Realty Inc. York, Ne." Robson was Equitable's closing agent for the loan.

In 1988, Alvin Ehlers died. Frances, his widow, remarried and has taken the name "Starr." Pamella and James were unable to repay their loan from Equitable and obtained debtor protection under chapter 12 of the U.S. Bankruptcy Code. As a consequence of Pamella and James' bankruptcy and default on the promissory note, Equitable sought payment from Starr, who refused to pay the debt, even though the note ostensibly bore her signature. Equitable responded by suing Starr on the note.

## THE TRIAL

At trial, James and Pamella testified that neither Alvin nor Frances Ehlers, James' parents, was at the loan closing, despite the fact that the promissory note bore the Ehlers' signatures. In contrast, Robson, Equitable's agent who closed the loan transaction, testified that James, Pamella, and Alvin were present at closing, but admitted that Frances was absent. Robson further testified that Alvin Ehlers signed the note in Robson's presence, and Alvin then took the note away to another location so that Frances could sign. Robson also testified that when Alvin returned, the note bore Frances Ehlers' signature. The original promissory note to Equitable was introduced into evidence. However, Equitable could not locate the original canceled check for distribution of the loan proceeds, but instead presented a photostatic copy showing the face of the original check without displaying the obverse side of the check and any endorsements.

In an effort to prove genuineness for the purported signature of Frances Ehlers on the promissory note, Equitable offered testimony from Harold W. Moon, an expert "questioned documents examiner," who had examined and tested thousands of documents for evidence of alteration and forgery. Under various testing procedures, Moon examined Frances Ehlers' disputed signature and compared it to known examples of her genuine signature. Based on his examination and comparison with Starr's valid signatures, Moon testified that the purported signature had definitely not been forged by any tracing techniques and that there was a "high degree of probability" that the questioned signature on the promissory note was the genuine signature of Frances Ehlers. However, Moon further testified that he could not say with certainty that the signature on the promissory note was that of Starr, because the signature on the note indicated some dissimilarities when compared with Starr's handwriting. Moon testified that the only way that the signature on the note could be a forgery was simulation by someone who had had "a great deal of practice" signing the name "Frances D. Ehlers," Starr's former name.

During the testimony of James Ehlers, Starr introduced James' original deposit slip, dated May 5, 1980, which was the

same day as the closing, showing the deposit of a $112,440 check from Equitable. This came as a surprise to Equitable, because Equitable's policy dictated that loan proceeds checks were given only to Equitable's closing agent, who, after endorsement of the check, would then typically distribute the proceeds to the borrowers. On cross-examination, James gave Equitable permission to obtain his bank's records concerning the deposit.

During a recess, Equitable's lawyer went to the bank and obtained a copy of the loan proceeds check from the bank's microfilmed records for James Ehlers. This photostatic copy showed both sides of Equitable's processed check which had been deposited in James' account. The check's reverse side disclosed the purported signatures of all five payees in the following order:

>James A. Ehlers
>
>Pamella J. Ehlers
>
>Alvin R. Ehlers
>
>Frances D. Ehlers
>
>Donald S Robson
>Ins & Realty, Inc
>by Donald S Robson

Neither Starr nor Equitable asked the court to grant a recess to consider the impact of this recently discovered evidence.

Starr testified in her own defense, stating that she had never seen or signed the promissory note or proceeds check and that Alvin Ehlers, her late husband, had told Equitable's agents before closing that she would not sign the note. She also testified that her late husband, Alvin, had instructed her "under no circumstances, don't ever sign that note" and that she "just obeyed what he told me to do."

During cross-examination of Starr, Equitable sought to introduce the bank photocopy of the loan proceeds check. Court and counsel conferred in chambers and discussed the photocopied check's admissibility. Equitable's lawyer contended that the photocopy of the check was admissible

under Neb. Evid. R. 1001(4), 1002, and 1003 (Neb. Rev. Stat. §§ 27-1001(4), 27-1002, and 27-1003 (Reissue 1989)).

The definition of "duplicate" is expressed in Rule 1001(4): "A duplicate is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic rerecording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original."

Rule 1002 provides:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress or of the Legislature of the State of Nebraska or by other rules adopted by the Supreme Court of Nebraska.

Rule 1003 states: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Referring to these evidence rules, Starr's lawyer claimed that the photocopy was unfairly surprising, since the copy was not exchanged in accordance with the pretrial order which directed the parties to exchange exhibits, but did not identify exhibits to be exchanged. Starr's lawyer also stated that he was "definitely going to raise a question as to the authenticity of the original," but specified no grounds for such challenge and further argued that it would be impossible to test the photocopied check's signature for indicia of forgery; therefore, reception of the photocopy as evidence would be "just totally unfair."

During this conference, the court stated that admissibility of the photocopied check required consideration of, and determination by, Neb. Evid. R. 1004, Neb. Rev. Stat. § 27-1004 (Reissue 1989), which provides:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
>
> (1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

(2) No original can be obtained by any available judicial process or procedure; or

(3) At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing; or

(4) The writing, recording, or photograph is not closely related to a controlling issue.

After a lengthy discussion, the court announced its ruling on the admissibility of the photocopied proceeds check:

At this time I'm going to rule that [the photocopy] may not be introduced into evidence, or any reference made to it due to [Rule] 1003, subsection (2), in the circumstances it would be unfair to admit the duplicate in lieu of the original, and I am ruling in this manner because there has not been any evidence produced by the plaintiff at this point that the originals are lost or have been destroyed, and also under subsection (3) of [Rule] 1004.

Obviously, that leaves it open; if you do produce evidence in that area, then I may reconsider this ruling. But at this particular time, with this witness, [the photocopied check] will not be received.

. . . .

[EQUITABLE'S LAWYER]: Your Honor, obviously I reserve my objection to the ruling.

THE COURT: Yes, your objection to the ruling is noted for the record.

When the trial resumed, Equitable was unable to supply the foundational testimony that the court indicated during the conference in chambers; therefore, the photocopy of Equitable's check was excluded from evidence. Consequently, the court's exclusionary ruling was based on the Nebraska Evidence Rules and was not the result of any noncompliance with the pretrial order. After the parties rested, the jury returned a verdict for Starr.

## EQUITABLE'S APPEAL

Equitable contends that the district court erred in requiring

that Equitable produce evidence that the original loan proceeds check, purportedly signed by Starr, was lost or destroyed before a photocopy of the check was admissible as a duplicate of the original check.

At the outset, we note that chapter 27, article 10, of the Nebraska Evidence Rules contains the so-called "best evidence" rule in Nebraska, *Omaha World-Herald Co. v. Nielsen*, 220 Neb. 294, 369 N.W.2d 631 (1985), and is virtually identical to the corresponding Federal Rules of Evidence, see Fed. R. Evid. 1001 to 1004.

The best evidence rule, which might more properly be called the "original writing" rule or, more correctly, the rule for "production of an original writing or document," is in reality

a rule of preference for the production of the original of a writing, recording or photograph when the contents of the item are sought to be proved. Better described as the "Original Writing Rule", the rule is limited to writings, recordings, and photographs, Rule 1002; there is no general rule of evidence that a party must produce the best evidence which the nature of the case permits.

Michael H. Graham, Handbook of Federal Evidence § 1001.0 at 1058-59 (3d ed. 1991).

Thus, the original writing or "original document" rule, expressed in Rule 1002, does not set up a hierarchy for admissibility of evidence, but applies when a party seeks to prove material contents of a writing, recording, or photograph. See, *United States v. Gonzales-Benitez*, 537 F.2d 1051 (9th Cir. 1976); *State v. Lang*, 354 N.W.2d 723 (S.D. 1984); *State v. Stramiello*, 392 So. 2d 425 (La. 1980); *Mitchell v. State*, 84 Wis. 2d 325, 267 N.W.2d 349 (1978). The purpose of Rule 1002 is the prevention of fraud, inaccuracy, mistake, or mistransmission of critical facts contained in a writing, recording, or photograph when its contents are an issue in a proceeding. See, *U.S. v. Yamin*, 868 F.2d 130 (5th Cir. 1989) (original document rule prevents inaccuracy and fraud in an attempt to prove the contents of a writing); *Williams v. State*, 386 So. 2d 538 (Fla. 1980) (original document rule ensures accuracy in proof of a document's critical contents); *Proffitt v. Ricci*, 463 A.2d 514 (R.I. 1983) (in the absence of a satisfactory explanation for

nonproduction of an original document, the original document rule bars admission of secondary evidence to prove the contents of the document); *Crosson v. State*, 268 Ind. 511, 376 N.E.2d 1136 (1978) (original document rule excludes testimony concerning the contents of a document when the document itself is available for examination by the trier of fact). See, also, 2 McCormick on Evidence § 231 (John W. Strong 4th ed. 1992).

As observed in 2 McCormick on Evidence, *supra*, § 236 at 72-74:

> The treatment of copies under the rule requiring the production of the original document can only properly be understood when viewed in light of the technological history of copying itself. In its earliest stages, the rule appears to have developed against a background of copying performed by individuals of the Bob Cratchit sort, transcribing manually not always under the best of conditions. Errors under such circumstances were routinely to be expected. Only marginally greater reliability was to be found in the so-called letter-press. Here the original was written or typed in copying ink or with copying pencil. Presumably influenced by the infirmities present in such modes of copying, the courts generally declined to accept subsequently created copies as equivalent to originals.
>
> . . . .
>
> In the present day, copying by various photographic and other processes has become commonplace, replacing the carbon for many purposes. Various types of photographic copying, of course, produce facsimiles of an extremely high degree of verisimilitude, and thus might have been expected, as have carbons, to win recognition as duplicate originals. . . .
>
> . . . .
>
> . . . Insofar as the primary purpose of the original documents requirement is directed at securing accurate information from the contents of material writings, free of the infirmities of memory and the mistakes of hand-copying, we may well conclude that each of these forms of mechanical copying is sufficient to fulfill the

policy. Insistence upon the original, or accounting for it, places costs, burdens of planning, and hazards of mistake upon the litigants. These may be worth imposing where the alternative is accepting memory or hand-copies. They are probably not worth imposing when risks of inaccuracy are reduced to a minimum by the offer of a mechanically produced copy.

One court has taken McCormick's observations to their logical conclusion:

Professor Irving Younger vividly describes the human frailty of a copier, as a Bob Cratchit, fingers numbed by the cold in the counting house and fraught with anxiety over the health of Tiny Tim, might distractedly misplace a decimal point, invert a pair of digits or drop a line. A Xerox machine, by way of contrast, does not worry about Tiny Tim and does not, therefore, misplace decimal points, invert digits, drop lines, or suffer any of the other mental lapses that flesh is heir to.

*Thompson v. State*, 62 Md. App. 190, 212, 488 A.2d 995, 1006 (1985).

A bank photocopy of a processed check qualifies as a duplicate under Rule 1001(4). *State v. Costello*, 199 Neb. 43, 256 N.W.2d 97 (1977). See, also, *U.S. v. Patten*, 826 F.2d 198 (2d Cir. 1987); *United States v. Garmany*, 762 F.2d 929 (11th Cir. 1985); *United States v. Gerhart*, 538 F.2d 807 (8th Cir. 1976).

In what may be underscoring the obvious with the self-evident, we repeat the express language of Rule 1003: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Hence, a duplicate writing, defined in Rule 1001(4), is admissible under Rule 1003 to the same extent as an original writing without a showing that the original is lost or destroyed or is otherwise unavailable under the circumstances expressed in Rule 1004 regarding a lost or destroyed original writing.

When a duplicate writing or document is offered as evidence, the burden of raising an issue concerning the authenticity of the

original writing or document, or showing circumstances of unfairness to prevent admissibility of a duplicate, is on the party opposing the duplicate's admission into evidence. *State v. Frederiksen*, 224 Neb. 653, 400 N.W.2d 225 (1987). See, also, *Garmany, supra*.

Starr claims that there was a "genuine question as to the authenticity of the original," but offered no supporting factual basis for this assertion. Federal courts, addressing the question of an original document's authentication, have held that an opponent to admissibility of a duplicate must make more than a mere allegation regarding a lack of authenticity for an original writing or document; instead, the party opposing admission must show specific facts or circumstances that raise a reasonable question regarding authenticity of the original. See, *U.S. v. Leight*, 818 F.2d 1297 (7th Cir. 1987); *United States v. Georgalis*, 631 F.2d 1199 (5th Cir. 1980); *United States v. Rangel*, 585 F.2d 344 (8th Cir. 1978). See, also, 2 McCormick on Evidence, *supra*, § 236; 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 1003[01] (1992). In this appeal, the original document is a loan proceeds check, deposited into James Ehlers' bank account, with an increase exceeding $112,000 resulting from the transaction. None of the parties presented evidence that raised any question concerning the validity or authenticity of the documents involved in this depository transaction. Therefore, Starr has failed to meet her burden of factually establishing a question regarding the authenticity of the original document, Equitable's loan proceeds check.

Starr also contends that the admission of the photocopied check would have been "unfair" under Rule 1003(2), due to the surprise caused by its sudden appearance during trial. Starr apparently argues that reception of the check in evidence would be unfair in view of Equitable's failure to exchange the photocopied check pursuant to the pretrial conference order. This argument is also without merit. First, the photocopy of the check was discovered as the direct result of Starr's introduction of James Ehlers' 1980 deposit slip into evidence, a document reflecting deposit of Equitable's $112,440 check in James Ehlers' account. Existence of Equitable's check, therefore, was

indicated by the very evidence introduced by Starr. Actually, the only real surprise came to Equitable on learning that its company policy for distribution of loan proceeds was violated in the loan to Pamella and James Ehlers. Second, "surprise" is not a type of unfairness contemplated by Rule 1003(2). Courts which have addressed the issue of unfairness under Rule 1003 have uniformly held that, under Rule 1003(2), unfairness must involve some infirmity with the duplicate itself; for example, an incomplete copy that fails to reproduce some vital part of the original document. See, *United States v. Moore*, 710 F.2d 157 (4th Cir. 1983); *Amoco Production Co. v. United States*, 619 F.2d 1383 (10th Cir. 1980). See, also, 2 McCormick on Evidence, *supra*, § 236 at 75 n.11: "The requirement that introduction of the duplicate entail no 'unfairness' continues the doctrine that the duplicate must be a full rendition of the relevant material." Starr's argument regarding unfairness stems from the fact that the duplicate so accurately reproduced the original that it disclosed previously unknown evidence detrimental to Starr's case. Starr's arguments regarding unfairness prohibited by Rule 1003(2) are without merit. Therefore, the district court also erred in ruling that admission of the duplicate check would be unfair to Starr.

As a result of Neb. Evid. R. 103(1), Neb. Rev. Stat. § 27-103(1) (Reissue 1989), reversible error may be predicated on an erroneous exclusion of evidence that affects a party's substantial right. "In a civil case, to constitute reversible error contemplated in Neb. Evid. R. 103(1) . . . admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded." *Rose v. City of Lincoln*, 234 Neb. 67, 76, 449 N.W.2d 522, 529 (1989). Accord, *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

The excluded photocopy of Equitable's check would have supplied relevant information for the jury on the issue whether Starr had signed the promissory note involved in the litigation. The excluded photocopy shows Frances Ehlers' purported signature and buttresses Equitable's position that, if Frances Ehlers endorsed Equitable's check, it was more probable than

not that she also signed the promissory note to Equitable, the loan document that resulted in issuance and endorsement of the check for loan proceeds deposited in James Ehlers' account. See Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989): "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Exclusion of the photocopied check affected Equitable's proof that Starr had signed the promissory note and prejudicially denied Equitable the fair opportunity to prove its case against her. Therefore, the district court committed reversible error by requiring Equitable to produce evidence that the check in question was lost or destroyed and, in the absence of such proof, excluding the photocopy of Equitable's check.

## CONCLUSION

The district court's excluding from evidence the photostatic copy of Equitable's check, endorsed with the purported signature of Frances Ehlers, is reversible error under the circumstances. However, nothing in this opinion restricts Starr's right on retrial to dispute the authenticity of her purported signature as an endorsement on Equitable's check for the loan proceeds. Our decision today governs only admissibility of the photostatic copy of Equitable's check in view of the Nebraska Evidence Rules and does not prevent Starr from attempting to discredit that evidence before a jury.

REVERSED AND REMANDED FOR A NEW TRIAL.