in danger. Butler had no way of determining whether or not the passenger was in need of assistance without conducting a stop of Rohde's vehicle, and he was not required to delay an attempt to determine if assistance was needed in order to obtain a warrant and, in fact, could have been considered derelict had he failed to act promptly to ascertain if the passenger was in need of assistance. See *State v. Moore*, 129 Wash. App. 870, 120 P.3d 635 (2005). Thus, considering the totality of the circumstances surrounding the stop, it was reasonable for Butler to stop Rohde's vehicle to determine if his female passenger was in need of assistance and the community caretaking exception justified the stop of Rohde's vehicle.

## VI. CONCLUSION

In sum, having determined that the community caretaking exception also applies to passengers or occupants in a vehicle and that it applied in the instant case to justify the stop of Rohde's vehicle to check on the welfare of the female passenger, we affirm Rohde's conviction and sentence.

Affirmed.

---

Burdette Flodman and Phyllis Flodman, appellees,
v. Corky Robinson, doing business as
The Vacuum Company, appellant.

___ N.W.2d ___

Filed June 9, 2015.    No. A-14-510.

1. **Small Claims Court: Appeal and Error.** The district court and higher appellate courts generally review judgments from a small claims court for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. ____: ____. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.
4. **Sales: Notice: Time.** Neb. Rev. Stat. § 69-1603(1) (Reissue 2009) provides the buyer with a right to cancel a home solicitation sale until midnight of the third business day after the seller has given notice of the buyer's right to cancel.

5. **Sales: Notice.** Neb. Rev. Stat. § 69-1603(2) (Reissue 2009) requires the buyer's notice of cancellation to be sent by mail and addressed to the seller. The buyer's notice of cancellation is considered given at the time it is mailed.

6. ____: ____. Neb. Rev. Stat. § 69-1604(1) (Reissue 2009) contains the language a seller is required to include in the notice of cancellation.

7. ____: ____. As an alternative to the language provided in Neb. Rev. Stat. § 69-1604(1) (Reissue 2009), § 69-1604(2) permits a seller to use the language provided by the Federal Trade Commission in a notice of cancellation.

8. **Time: Words and Phrases.** For purposes of Neb. Rev. Stat. § 69-1603(1) (Reissue 2009), "business day" is defined as any calendar day except Sunday or any federal holiday.

9. **Sales: Notice.** Neb. Rev. Stat. § 69-1604(5) (Reissue 2009) permits a buyer to cancel a home solicitation sale in any manner and by any means if the seller has not complied with the requirements in § 69-1604(1).

10. **Sales: Notice: Time.** The seller's inclusion of an incorrect date for the buyer's right to cancel in a home solicitation sale is more than a technical violation of the statute and does not comply with Nebraska law.

11. **Rules of Evidence: Proof: Words and Phrases.** The best evidence rule, also known as the original document rule, as expressed in Neb. Rev. Stat. § 27-1002 (Reissue 2008), states that the original writing, recording, or photograph is required to prove the content of that writing, recording, or photograph.

12. **Rules of Evidence: Proof.** When a duplicate writing or document is offered as evidence, the burden of raising an issue concerning the authenticity of the original writing or document, or showing circumstances of unfairness to prevent admissibility of a duplicate, is on the party opposing the duplicate's admission into evidence.

13. **Small Claims Court: Rules of Evidence.** Pursuant to Neb. Rev. Stat. § 25-2806 (Reissue 2008), the formal rules of evidence do not apply in small claims court.

14. **Small Claims Court.** The setting in small claims court affords the parties the opportunity to obtain a prompt and just determination in an action involving small amounts while expending a minimum amount of resources.

15. ____. The small claims setting is vastly different from the relatively more complex and time-consuming litigation that occurs in county or district courts.

16. **Courts: Appeal and Error.** A court cannot err with respect to a matter not submitted to it for disposition.

Appeal from the District Court for Polk County, Patricia A. Lamberty, Judge, on appeal thereto from the County Court for Polk County, Stephen R.W. Twiss, Judge. Judgment of District Court affirmed in part and in part reversed, and cause remanded with directions.

Kelly M. Thomas, of Svehla Law Offices, P.C., for appellant.

No appearance for appellees.

Moore, Chief Judge, and Irwin and Riedmann, Judges.

Moore, Chief Judge.

Corky Robinson, doing business as The Vacuum Company, appeals from an order of the district court for Polk County, which found in favor of Burdette Flodman and Phyllis Flodman in connection with their claim arising out of a purchase of a vacuum cleaner from Robinson. Sitting as an appellate court, the district court affirmed an order of the small claims division of the Polk County Court. In this appeal, Robinson asserts that the county court erred when it determined that the cancellation notice contained in the purchase agreement violated the statutes regulating home solicitation sales. Robinson also argues that the county court should not have accepted a copy of the purchase agreement into evidence and that the court erred in requiring him to return the Flodmans' two previously owned vacuum cleaners. For the reasons that follow, we affirm in part, and in part reverse and remand with directions.

## FACTUAL BACKGROUND

On December 19, 2013, Robinson visited the Flodmans at their home with the objective of selling them a vacuum cleaner. The Flodmans eventually purchased one of Robinson's vacuum cleaners for $510. As part of this transaction, the Flodmans gave Robinson two of their old vacuum cleaners, a "Dyson Ball" and a "Rainbow." Robinson accepted $500 in full satisfaction of the price of the vacuum cleaner.

To memorialize the sale, Robinson prepared and delivered to the Flodmans two copies of his standard purchase agreement. Robinson retained a third copy for his records. Robinson's purchase agreement contains a description of the sale as well as an advisement regarding a buyer's right to cancel. The advisement, in all capital letters, informs the buyer that he or she "'MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.'" Phyllis signed

the agreement, certifying that she was given notice of her rights as a buyer and that she had received two copies of the agreement.

The separate notice of cancellation is printed to the side of the purchase agreement. The notice, reproduced in its entirety below, advises the purchaser:

> BUYER'S RIGHT TO CANCEL
>
> NOTICE OF CANCELLATION
>
> Date of Transaction __ /__ /__
>
> You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date. If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.
>
> If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.
>
> If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.
>
> To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to. The Vacuum Company, 1805 S 9th St. Lincoln Ne. 68502
>
> NO LATER THAN MIDNIGHT OF __ /__ /__
>
> I HEREBY CANCEL THIS TRANSACTION.
>
> (Date) _____
>
> (Buyer's Signature) _____

In addition to the above, Robinson's standard purchase agreement also specifies that he does not accept any other form of communication in place of the requirement for written cancellation. Finally, the form explains that all sales are final after the 3-day cancellation period elapses.

On the notice of cancellation given to the Flodmans, Robinson noted that the date of the transaction was "12/19/13." Robinson also indicated that the Flodmans had to exercise their right to cancel no later than midnight of "12/22/13." A review of the calendar shows that December 22, 2013, was a Sunday.

On the morning of Saturday, December 21, 2013, Phyllis contacted Robinson by telephone to advise him that she did not like the vacuum cleaner she and her husband had purchased. Robinson acknowledged that this telephone call occurred. In response, Robinson told Phyllis that she needed to "put [her] letter in the mailbox." During this telephone conversation, Robinson also agreed to return to the Flodmans' home after Christmas to look at the vacuum cleaner he had sold them.

Robinson returned to the Flodmans' home 12 days after the sale had been completed. During this visit, Phyllis informed Robinson of her desire to cancel the sale. Relying on the notice of cancellation in the purchase agreement, and the Flodmans' failure to mail in the completed notice of cancellation, Robinson declined to permit the Flodmans to return the vacuum cleaner.

The Flodmans filed a small claims action against Robinson in the Polk County Court seeking to return the vacuum cleaner they had purchased from Robinson and to recover the money they had paid Robinson for that vacuum. The Flodmans also sought to have Robinson return the vacuum cleaners they had traded to him at the same time they purchased the new vacuum cleaner. In their filed claim, the Flodmans alleged that the two vacuum cleaners they had given Robinson were valued at $800. On February 13, 2014, the county court held a hearing on the Flodmans' claim.

At the hearing, the Flodmans contended that Phyllis' telephone call to Robinson on December 21, 2013, was sufficient

to cancel the sale. The Flodmans also asserted they had given Robinson a Dyson vacuum cleaner and another vacuum cleaner as part of the sale. During their testimony, the Flodmans could not agree whether the second vacuum cleaner was a "Kirby" or a "Rainbow." They asked the court to order Robinson to return those two vacuum cleaners.

Robinson explained to the court that his purchase agreement form complied with all applicable law pertaining to home solicitations. He testified that he had conversations with the Attorney General's office in both Nebraska and Kansas and received their approval for his form. Robinson maintained that he had the right to refuse the Flodmans' attempted cancellation of the sale because they had not complied with the terms of the purchase agreement. Finally, Robinson disagreed with the Flodmans' claim that they had traded two vacuum cleaners as part of the sale. Rather, Robinson testified that "the bearings were out of" the two old vacuums, that "[he] can't get much for that old of a model," and that the vacuums were given to him to dispose of.

On February 25, 2014, the county court entered an order in which it found in favor of the Flodmans. The court determined that the transaction between the Flodmans and Robinson was controlled by Neb. Rev. Stat. §§ 69-1601 to 69-1607 (Reissue 2009). Further, the court concluded that the language in Robinson's standard purchase agreement and accompanying notice of cancellation complied with Nebraska law pertaining to home solicitation sales. However, the county court found that Robinson incorrectly completed his form because of his indication that December 22, 2013, was the last day for the Flodmans to exercise their right to cancel the sale. Because December 22 was a Sunday, and, therefore, not a business day, the court found that Robinson's notice of cancellation did not comply with Nebraska or federal law.

Due to the fact that Robinson's notice of cancellation did not comply with the applicable statutes, the county court concluded that the law permitted the Flodmans to exercise their right to cancel in any manner and by any means they chose. Thus, the Flodmans' telephone call to Robinson on December 21, 2013, canceled the sale. The county court ordered that the Flodmans

were entitled to the return of any money paid to Robinson in addition to the return of the two vacuum cleaners they had tendered to him as part of the sale. The Flodmans were ordered to return to Robinson the vacuum cleaner they had purchased upon Robinson's compliance with the court's order.

Robinson appealed the county court's order to the district court. At oral arguments before the district court, Robinson maintained that his purchase agreement and attached notice of cancellation complied with all applicable law. Robinson also claimed that his copy of the purchase agreement relating to the sale to the Flodmans contained December 23, 2013, as the final date for the Flodmans to exercise their right to cancel. Robinson believed that the tripartite paper did not allow the entire date to copy through. He informed the court that he attempted to adduce his copy of the purchase agreement into evidence at the small claims court, but was prevented from doing so by the clerk magistrate. Finally, Robinson argued to the district court that the Flodmans had requested he recycle their two old vacuum cleaners and that he did so as a free service to them. He asserted that a trade-in would have been reflected on the purchase agreement.

On May 7, 2014, the district court entered an order affirming the judgment of the county court. The district court did not find any errors on the record. Robinson now appeals to this court.

## ASSIGNMENTS OF ERROR

Robinson assigns three errors. He asserts, restated, that the county court erred by (1) concluding the notice of cancellation did not comply with Nebraska law, (2) allowing the Flodmans to introduce a carbon copy of the purchase agreement when the original was available, and (3) finding that the Flodmans had traded their two vacuum cleaners as part of the sale with Robinson.

## STANDARD OF REVIEW

[1] The district court and higher appellate courts generally review judgments from a small claims court for error appearing on the record. See, Neb. Rev. Stat. §§ 25-2733 and 25-2807

(Reissue 2008); *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

[2,3] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *First Nat. Bank of Unadilla v. Betts*, 275 Neb. 665, 748 N.W.2d 76 (2008). However, in instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id*.

## ANALYSIS

*Contents of Purchase Agreement
and Cancellation Notice.*

[4,5] As the county court accurately stated in its order, this case comes within the Nebraska statutes governing home solicitation sales, §§ 69-1601 to 69-1607. In this case, the provisions within §§ 69-1603 and 69-1604 determine the outcome. Section 69-1603(1) provides the buyer with a right to cancel a home solicitation sale until midnight of the third business day after the seller has given notice of the buyer's right to cancel. Section 69-1603(2) requires the buyer's notice of cancellation to be sent by mail and addressed to the seller. The buyer's notice of cancellation is considered given at the time it is mailed.

[6,7] Section 69-1604(1) contains the language a seller is required to include in the notice of cancellation. Subsection (1) specifically states:

> Whenever a buyer has the right to cancel a home solicitation sale, the seller's contract shall contain a notice to be printed in capital and lowercase letters of not less than ten-point boldface type and appear under the conspicuous caption: BUYER'S RIGHT TO CANCEL; which shall read as follows: You may cancel this agreement by mailing a written notice to (Insert name and mailing address of seller) before midnight of the third business day after you signed this agreement. If you wish, you may use this

page as that notice by writing "I hereby cancel" and adding your name and address. § 69-1604(1). As an alternative, § 69-1604(2) permits a seller to use the language provided by the Federal Trade Commission in its trade regulation rule as long as that language provides at least equal information as that required by § 69-1604(1). The Federal Trade Commission requires the following language in a notice of cancellation:

Notice of Cancellation

[enter date of transaction]

_____

(Date)

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to [*Name of seller*],

at [*address of seller's place of business*] NOT LATER
THAN MIDNIGHT OF [*date*].
    I HEREBY CANCEL THIS TRANSACTION.
    (Date) _____
    (Buyer's signature) _____
16 C.F.R. § 429.1 (2013) (emphasis in original).

The notice of cancellation on Robinson's form adopts the
language from the Federal Trade Commission's rule. As is
evident from above, the language from the Federal Trade
Commission's rule provides information that is at least equal to
Nebraska's required language in § 69-1604(1). Thus, the lan-
guage in Robinson's standard notice of cancellation complies
with Nebraska law.

[8,9] The difficulty in this case arises because Robinson's
cancellation notice for the particular transaction with the
Flodmans contains an incorrect date. The purchase agreement
displays December 22, 2013, as the final day for the Flodmans
to have exercised their right to cancel the sale. The question is
whether December 22 was a business day. The Nebraska stat-
utes governing home solicitation sales do not define "business
day." Based on the Legislature's reference in § 69-1604(2) to
the Federal Trade Commission's rule, we believe it is appro-
priate to adopt the Federal Trade Commission's definition
of "business day" for Nebraska home solicitation sales. The
Federal Trade Commission defines "business day" as "[a]ny
calendar day except Sunday or any federal holiday (e.g., New
Year's Day, Presidents' Day, Martin Luther King's Birthday,
Memorial Day, Independence Day, Labor Day, Columbus Day,
Veterans' Day, Thanksgiving Day, and Christmas Day.)" 16
C.F.R. § 429.0(f) (2013). Applying this definition of "business
day" to the present case, we observe that although December
22 was the third day after Robinson's sale to the Flodmans,
it was a Sunday, not a business day. Therefore, Monday,
December 23, should have been the last day for the Flodmans
to exercise their right to cancel. Under § 69-1604, subsection
(5) specifies that a buyer may cancel a home solicitation sale
in any manner and by any means if the seller has not complied
with the requirements in subsection (1).

Thus, the next question in this case is whether Robinson's failure to fill in the blank with the correct date causes the cancellation notice to run afoul of § 69-1604. If it did, then the Flodmans' telephone call to Robinson would suffice to cancel the sale. See § 69-1604(5). Robinson contends the cancellation notice in question was effective because there is nothing in the Nebraska statutes or case law which requires any type of "fill-in-the-blank" date on a cancellation notice. He correctly observes that § 69-1603(1) requires only a statement that the buyer has 3 business days to cancel a sale.

Despite Robinson's contentions, we agree with the county court's conclusion. Our review of the legislative history of this statutory section regarding home solicitation sales reveals that the purpose of the section was to "provide the consumers of the State of Nebraska some protection in the field of home solicitation sales." Committee Statement, L.B. 212, Committee on Miscellaneous Subjects, 83d Leg., 1st Sess. (Apr. 2, 1973). Keeping that purpose in mind, the protection provided to the buyer by the cancellation period of 3 business days required in § 69-1603(1) would be frustrated if a seller were permitted to advise the buyer of an incorrect expiration date for the buyer's right of cancellation. We recognize that Nebraska law does not require Robinson to include a specific date for the expiration of the buyer's right to cancel on the notice of cancellation. However, in order to comply with Nebraska law once a buyer elects to include a specific date, it is axiomatic that the correct date should be used in order to require the buyer to strictly comply with the provisions in the cancellation notice.

Our research has revealed that there is no authority construing the home solicitation statutes in Nebraska. Similarly, there is very little guidance from other states with respect to the inclusion of a specific date for cancellation of a home solicitation sale. While Robinson cites to various cases decided under the Federal Truth in Lending Act for the proposition that technical violations of cancellation notices may be overlooked, this authority does not address the particular situation with which we are presented—namely, the inclusion of

an incorrect cancellation date. Our independent research has not revealed any cases in the realm of state home solicitation statutes or under federal regulations in which the inclusion of an incorrect date in a cancellation notice was addressed, let alone excused.

Nonetheless, we find some guidance from the Connecticut Supreme Court's decision in *Wright Bros. Builders, Inc. v. Dowling*, 247 Conn. 218, 720 A.2d 235 (1998). In that case, the Connecticut court was called upon to determine whether the failure to include the date of the transaction or the date by which the transaction could be canceled on the notice of cancellation precluded enforcement of the contract. We pause to note that this case involved Connecticut's Home Improvement Act which incorporated provisions from that state's Home Solicitation Sales Act. Among the adopted provisions was the requirement for a notice of cancellation which is similar to the notice Robinson uses on his form. Connecticut law requires the notice of cancellation to include the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation. See Conn. Gen. Stat. Ann. § 42-135a (West 2012). The Connecticut Supreme Court further noted that although compliance with the Home Improvement Act was mandatory, such compliance did not have to be "technically perfect." *Wright Bros. Builders, Inc. v. Dowling*, 247 Conn. at 231, 720 A.2d at 241. Turning to the specific contract, the Connecticut Supreme Court concluded that the seller's failure to fill in the blanks with the date of the transaction and the date by which the buyer could cancel the sale was not fatal. The court concluded that the missing information could have been gleaned from even "the most cursory review of the contract." *Id.* at 233, 720 A.2d at 242. The failure to include the dates on the notice of cancellation did not rise to the level of noncompliance with the law.

[10] The reasoning in *Wright Bros. Builders, Inc.* leads us to the opposite conclusion in this case. While failure to

include a date for cancellation may be a technical violation overcome by inclusion of the 3-day cancellation language, including an incorrect date on the notice of cancellation is clearly more than a technical violation of the statute. Inclusion of an incorrect date may lead a buyer to conclude that his or her right to cancel an unwanted sale had expired, when in reality it had not. Such a practice by a seller would infringe on the buyer's protection under § 69-1603(1).

To summarize, because Robinson's cancellation notice for this particular transaction contained an incorrect date for the expiration of the Flodmans' right to cancel, it did not comply with Nebraska law. That being the case, the Flodmans were permitted to cancel the sale by any means they chose. We determine that Phyllis' telephone call to Robinson on December 21, 2013, canceled the sale.

*Copy of Purchase Agreement.*

During the small claims hearing, the Flodmans offered into evidence exhibit 3, one of the two copies of the purchase agreement they received from Robinson. The trial court concluded that this purchase agreement displayed December 22, 2013, as the final day for the Flodmans to exercise their right to cancel the sale. Robinson did not object to the introduction of this exhibit at trial or notify the court of a possible discrepancy regarding the date on the copy. However, on appeal to the district court, Robinson contended that the clerk magistrate did not allow him to introduce the original purchase agreement into evidence at the small claims hearing. Robinson asserted that the original purchase agreement correctly displayed December 23 as the final day for the Flodmans' right of cancellation. The district court rejected this argument.

Now, Robinson argues that the county court erred when it permitted the Flodmans to introduce a copy of the purchase agreement into evidence when the original was available. He contends that the admission of the copy of the purchase agreement into evidence prejudiced him because it was not the best evidence of the contents of the purchase agreement.

[11,12] The best evidence rule, also known as the original document rule, as expressed in Neb. Rev. Stat. § 27-1002 (Reissue 2008), states that the original writing, recording, or photograph is required to prove the content of that writing, recording, or photograph. See *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000). The purpose of this rule is to prevent fraud, inaccuracy, mistake, or mistransmission of critical facts contained in a writing, recording, or photograph when its contents are an issue in a proceeding. See *Equitable Life v. Starr*, 241 Neb. 609, 489 N.W.2d 857 (1992). When a duplicate writing or document is offered as evidence, the burden of raising an issue concerning the authenticity of the original writing or document, or showing circumstances of unfairness to prevent admissibility of a duplicate, is on the party opposing the duplicate's admission into evidence. *Id*.

[13-15] We reject Robinson's arguments for a number of reasons. First, Robinson's reliance on the best evidence rule is misplaced because the formal rules of evidence do not apply in small claims court. See Neb. Rev. Stat. § 25-2806 (Reissue 2008). The setting in small claims court affords the parties the opportunity to obtain a prompt and just determination in an action involving small amounts while expending a minimum amount of resources. *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002). The small claims setting is vastly different from the relatively more complex and time-consuming litigation that occurs in county or district courts. See *id*.

Additionally, even if the best evidence rule were to apply to small claims court, Robinson still had the burden to raise the issue to the court. Because he failed to raise any objection at the small claims hearing regarding the authenticity or contents of the Flodmans' copy of the purchase agreement, his arguments must also fail. See *Equitable Life v. Starr, supra*.

[16] Finally, Robinson's argument regarding his inability to introduce his copy of the purchase agreement at the small claims hearing is without merit. Robinson states that he attempted to introduce the original into evidence during his case in chief at the small claims hearing, but was prevented by the clerk magistrate. We have not discovered any such

attempt in the bill of exceptions from the small claims hearing or any objection on the record to the clerk's refusal to mark such an exhibit. Further, Robinson does not cite to any such example in his brief. A court cannot err with respect to a matter not submitted to it for disposition. *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010).

Therefore, based on the above reasons, we find Robinson's claim as to the best evidence rule to be without merit.

*County Court's Finding That Vacuum
Cleaners Were Trade-ins.*

Finally, Robinson assigns error to the county court's conclusion that the Flodmans had traded two vacuum cleaners as part of the transaction with Robinson. He contends that he made no promise that the Flodmans' vacuum cleaners would be treated as trade-ins. Robinson argues that he simply provided a free disposal service for the Flodmans.

At the small claims hearing, there was little evidence presented to establish how the parties intended to handle these two vacuum cleaners in the sale. The Flodmans introduced evidence in the form of an instruction manual to demonstrate that they gave Robinson a Dyson vacuum cleaner. Phyllis testified that this Dyson vacuum cleaner was 3 years old. The record is less clear as to the specifications of the second vacuum cleaner; Burdette testified that it was a "Rainbow," while Phyllis maintained that it was a "Kirby." Neither Burdette nor Phyllis testified to the value of either of these vacuum cleaners, and they did not specifically testify that the two vacuum cleaners were to be treated as trade-ins for the vacuum cleaner purchased from Robinson. Robinson testified that both of the Flodmans' vacuum cleaners were old, had worn-out bearings, and were given to him for disposal.

In addition to the parties' testimony, the purchase agreement sheds some light on this issue. The purchase agreement contains a typed notation on line 10 which states, "Customer Requests FREE Disposal-recycle of old Vacuum." Above that line, Robinson appeared to write "Dyson" and "R.B." Robinson's initials are in a box next to these handwritten notes.

The county court found that the Flodmans were entitled to the return of their two vacuum cleaners. We conclude this determination was clearly erroneous. The record from the small claims hearing does not contain any testimony from the Flodmans to support their contention that they believed they were giving these vacuum cleaners as trade-ins. In fact, the Flodmans' evidence at the small claims hearing related only to the identification of the two vacuum cleaners. As noted above, their evidence as to this issue was not clear.

Because of the Flodmans' failure to introduce evidence to support their contention that their two vacuum cleaners should be considered trade-ins, Robinson's testimony as to these vacuum cleaners was not contradicted. He testified that the two vacuum cleaners were given to him for disposal. He described each of these vacuums as "old" and stated that "the bearings were out" on each. The contents of the purchase agreement, while not the best example of clarity, also provided additional support for Robinson's claims that these vacuums were given to him for disposal.

Based on this record from the small claims hearing, we conclude that there was not competent evidence to support the order requiring Robinson to return the two vacuums to the Flodmans and that the district court erred by affirming that portion of the county court's order.

## CONCLUSION

We find no error on the record in the county court's receipt of exhibit 3, one of three copies of the purchase agreement. We also find no error in the county and district courts' conclusion that the cancellation notice in the purchase agreement, with the handwritten cancellation deadline, did not conform to Nebraska law such that Flodmans' oral cancellation was sufficient. We therefore affirm the judgment of the county court to the extent that it ordered Robinson to return the $500 paid to him by the Flodmans and ordered the Flodmans to return to Robinson the vacuum cleaner that they purchased from him. However, we conclude the county court's finding that the two vacuum cleaners previously owned by the Flodmans were trade-ins and that they were entitled to return of the vacuums

is not supported by competent evidence. We therefore reverse that portion of the district court's order affirming this finding, with directions to the district court to remand the cause to the county court with directions to reverse and vacate that portion of the order.

Affirmed in part, and in part reversed and remanded with directions.

---

In re Interest of Nery V. et al.,
children under 18 years of age.
State of Nebraska, appellee, v. Mario V., Sr.,
and Ida V., appellees, and Rosebud Sioux
Tribe, intervenor-appellant.
___ N.W.2d ___

Filed June 9, 2015.    No. A-14-654.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. ____: ____. An appellate court reviews questions of law independently of the juvenile court's conclusions.
3. **Indian Child Welfare Act.** The substantive portions of the Indian Child Welfare Act and the corresponding portions of the Nebraska Indian Child Welfare Act provide heightened protection to the rights of Indian parents, tribes, and children in proceedings involving custody, termination, and adoption.
4. **Juvenile Courts: Evidence: Proof.** In adjudication cases, the standard of proof for the active efforts element in Neb. Rev. Stat. § 43-1505(4) (Reissue 2008) is proof by a preponderance of the evidence.

Appeal from the County Court for Hall County: Philip M. Martin, Jr., Judge. Affirmed.

Lloyd E. Guy III for intervenor-appellant.

Megan Alexander, Deputy Hall County Attorney, for appellee State of Nebraska.

Susan M. Koenig, of Mayer, Burns, Koenig & Janulewicz, guardian ad litem.